UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

AUDREY LLOYD,

               Plaintiff,

v.

ANDREW SAUL, COMMISSIONER,

               Defendant.

**Hon. Hugh B. Scott**

**18CV738**

**CONSENT**

**Order**

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 12 (plaintiff), 15 (defendant Commissioner)). Having considered the Administrative Record, filed as Docket No. 7 (references noted as "[R. __]"), and the papers of both sides, this Court reaches the following decision.

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits. The parties consented to proceed before a Magistrate Judge (Docket No. 17).

## PROCEDURAL BACKGROUND

The plaintiff ("Audrey Lloyd" or "plaintiff") filed an application for disability insurance benefits on January 3, 2011 [R. 15]. That application was denied initially. The plaintiff appeared before the first Administrative Law Judge ("ALJ"), who considered the case de novo

and concluded, in a written decision dated July 18, 2013, that the plaintiff was not disabled within the meaning of the Social Security Act [R. 15]. On June 20, 2015, the Appeals Council denied plaintiff's review [R. 1]. Plaintiff then sought judicial review in this District, Lloyd v. Colvin, No. 15CV248G, and Chief Judge Geraci ordered a remand on July 21, 2016 [R. 435], Lloyd, supra, Docket No. 13. The Appeals Council remanded to the ALJ for further proceedings, on August 29, 2016 [R. 449].

Another hearing was held before a second ALJ on January 19, 2018 [R. 411]. On April 23, 2018, the new ALJ rendered his written decision also concluding that plaintiff was not disabled [R. 388]. There, the ALJ noted that plaintiff had unsuccessfully applied for disability benefits in January 2009 [R. 388]. The ALJ's decision became the final decision of the Commissioner on April 23, 2018 [R. 388].

Plaintiff commenced this action on July 3, 2018 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 12, 15), and plaintiff duly replied (Docket No. 16). Upon further consideration, this Court then determined that the motions could be decided on the papers.

**FACTUAL BACKGROUND**

Plaintiff, a 48-year-old as of the onset date with a high school education, last worked as a housekeeper [R. 401-02]. She contends that she was disabled as of the onset date of December 15, 2010 [R. 388].

**MEDICAL AND VOCATIONAL EVIDENCE**

On August 4, 2010, plaintiff was treated for pain in her hands and legs [R. 272-74] (Docket No. 12, Pl. Memo. at 4). On December 15, 2010, she was treated for pain at the level of 8 out of 10 [R. 281-82, 369-70] (id.).

On April 25, 2011, consultative examiner, Dr. Nikita Dave, conducted an internal medicine examination of plaintiff [R. 293-97] (id. at 3). There, plaintiff reported difficulty stirring, cooking, cleaning, and holding her grandchildren [R. 294]. Plaintiff had carpel tunnel syndrome bilaterally [R. 294]. She has morning fatigue, exhaustion, and diaphoresis [R. 294]. She complained of her hands being cold and she avoided cold climate and weather because of it [R. 293]. Dr. Dave diagnosed plaintiff with carpel tunnel, depression, sickle cell trait, chronic anemia, SLE, bilateral foot pain, fatigue, exhaustion, and dyspnea on exertion, hands becoming cold on exposure, alcohol and tobacco use [R. 296-97].

Dr. Dave then opined that plaintiff should avoid exposure to intense sunlight, that she had moderate limitations for repetitive fine and gross motor manipulation to both hands due to carpel tunnel syndrome [R. 297]. Dr. Dave advised that plaintiff should avoid extreme physical exertion due to lupus [R. 297]. Plaintiff would require frequent rest intervals with moderate activity and may be suited to light sedentary activities [R. 297].

The second ALJ, however, gave Dr. Dave's opinion partial weight [R. 399]. The ALJ found that Dr. Dave's findings were based upon a single examination [R. 399]. He also found that the doctor's opinion was not consistent with clinical findings or longitudinal treatment records [R. 399]. The ALJ pointed to the inconsistency between finding repetitive manipulation limitations and clinical findings that claimant had intact hand and finger dexterity [R. 399, 296].

3

He also found that plaintiff's impairments could be expected to cause these symptoms but plaintiff's statements concerning their intensity, persistence and limiting effects are not consistent with the medical record [R. 396]. The ALJ concluded that plaintiff's claimed limitations are not consistent with plaintiff's daily activities (tending to personal hygiene, preparing simple meals, performing household chores) [R. 397].

According to this Court's earlier decision in Lloyd v. Colvin, No. 15CV248, Docket No. 13 [R. 455], on January 3, 2011, plaintiff applied for benefits, claiming as an onset date December 15, 2010 [R. 455]. The first ALJ found that plaintiff was not disabled [R. 455]. Applying the five-step analysis, the first ALJ found at Step One that plaintiff had not engaged in substantial gainful activity since December 15, 2010 [R. 457]; the second ALJ on remand also so found [R. 391]. At Step Two, the first ALJ found plaintiff suffered from severe impairments of systemic lupus, cubital tunnel left elbow, and mild carpel tunnel [R. 457]; the second ALJ also found these same severe impairments [R. 391]. At Step Three, the first ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listed impairment [R. 457]; the second ALJ also found the lack of qualifying impairment [R. 395]. The first ALJ found that plaintiff had a residual functional capacity to perform light work with some additional limitations [R. 457-58]. This residual functional capacity did not address plaintiff's ability to be exposed to cleaning solvents. Upon remand, the second ALJ also found that plaintiff was able to perform light work, except plaintiff should not be exposed to cleaning chemicals, avoid environments not air conditioned, but plaintiff could occasionally handle items [R. 395-96]. At Step Four, the first ALJ found that plaintiff could perform her past relevant work as a housekeeper, hence denying her disability claim [R. 458].

4

Plaintiff sought judicial review of this denial of coverage. Chief Judge Geraci found that the first ALJ, while giving great weight to treating physician Dr. Entola Pone's findings, did not incorporate environmental restrictions Dr. Pone noted into the residual functional capacity, included an exclusion to exposure to chemical solvents [R. 459]. Chief Judge Geraci noted the first vocational expert opined that plaintiff could not perform her past relevant work as a housekeeper if she could not be exposed to cleaning solvents [R. 459-60]. The Court did not consider other aspects of plaintiff's residual functional capacity [see R. 458, Order at 5 n.3, declining to consider argument about limitations found by consultative examiner, Dr. Nikita Dave].

On remand from Chief Judge Geraci's decision, the second ALJ considered the limitations found by Dr. Pone [R. 376-81, 1473-79], and plaintiff's further testimony [R. 411, 389]. In a lupus residual functional capacity questionnaire, Dr. Pone stated that plaintiff on April 22, 2013, had discoid lupus, having a discoid rash and photosensitivity, and had redness, swelling, warmth, and significant limitation at several joints [R. 378, 376, 1477, 1475]. Dr. Pone advised plaintiff avoid temperature extremes, fumes, high humidity, solvents, cleaners and chemicals [R. 380, 1478]. Upon remand and the March 2018 request for supplemental information [R. 1473], Dr. Pone resubmitted the April 2013 questionnaire [R. 1475-79].

The second ALJ gave partial weight to Dr. Pone's opinion, noting the doctor's long treatment record with plaintiff and the doctor's specialization in rheumatology [R. 399]. While finding the avoidance of temperature extremes due to photosensitivity and discoid rashes from lupus were consistent with the medical record, the ALJ found that other aspects of the doctor's findings internally inconsistent [R. 399-400]. The ALJ found that Dr. Pone's pulmonary

5

restrictions were not supported by the record as a whole [R. 400]. Since plaintiff reported that she could perform household chores, including cleaning with chemical solvents, the totality of the record did not support total avoidance of solvents [R. 400], although the resulting residual functional capacity calls for "no exposure to cleaning chemicals, either normal industrial or household cleaning chemicals" [R. 395]. The ALJ also faulted Dr. Pone for not adequately accounting for plaintiff's manipulation limitations due to lupus [R. 400]. The ALJ concludes that plaintiff has some limitations in manipulation but not to the extent claimed [R. 400].

The second ALJ found plaintiff was unable to perform her past relevant work [R. 401]. With her residual functional capacity and her inability to perform her past work, that ALJ asked a second vocational expert to opine as to jobs in the national economy someone in plaintiff's medical, educational, and vocational situation could perform. That expert opined that a hypothetical claimant like plaintiff could work as a counter clerk, usher, or furniture rental clerk, all light exertion jobs [R. 402]. As a result, the ALJ held that plaintiff was not disabled [R. 403].

## DISCUSSION

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

6

*Standard*

I.     General Standards—Five-Step Analysis

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). When the plaintiff's impairment is a mental one, special "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g. speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's mental impairment is compatible with the performance of such work." See Social Security Ruling 82-62 (1982); Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington, supra, 37 F.3d at 1442.

II. Treating Physician Rule, Pre-March 2017

Plaintiff's claims predate changes to the treating opinion regulations. The treating physician rule applies to claims filed before March 27, 2017, 20 C.F.R. §§ 404.1527, 416.927

8

(2017), such as this one. On March 27, 2017, the current version of the SSA regulations eliminates the treating physician's rule for applications filed on or after that date, 20 C.F.R. §§ 404.1520c, 416.920c. E.g., Barco v. Comm'r, 330 F. Supp. 3d 913, 918 n.2 (W.D.N.Y. 2018) (Wolford, J.) (treating physician rule applies for claims filed in December 2013); Tuper v. Berryhill, No. 17CV6288, 2018 U.S. Dist. LEXIS 149125, at *2, 8 & n.2 (W.D.N.Y. Aug. 31, 2018) (Payson, Mag. J.) (treating physician rule applies to claim filed May 2013). The treating physician rule provided that

> A treating physician is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence. See 20 C.F.R. § 404.1527; see also Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998) (discussing application of the treating physician rule). Additionally, "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2)). While an ALJ may give less than controlling weight to a treating physician's opinion, he or she must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." Halloran, 362 F.3d at 33. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific. . . .'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (quoting Social Security Ruling ("SSR") 96-2p, 1996 SSR LEXIS 9 at *12, 1996 WL 374188, at *5 (S.S.A. July 2, 1996) [(rescinded 2017)].

Taillon v. Comm'r, No. 17CV6812, 2019 U.S. Dist. LEXIS 53376, at *5 (W.D.N.Y. Mar. 28, 2019) (Telesca, J.).

III. Calculation of Benefits

If plaintiff prevails, this Court either may remand for rehearing and further administrative proceedings or remand for the Commissioner to calculate benefits, 42 U.S.C. § 405(g). For calculation of benefits, the ALJ's error must be so obvious that the Court in effect declares plaintiff to be disabled and remands to calculate amount of benefits, Parker v. Harris, 626 F.2d

9

225, 235 (2d Cir. 1980), or where there is no reason to conclude that additional evidence might support the Commissioner's denial of disability, Butts v. Barnhart, 388 F.3d 377, 385-86 (2d Cir. 2004). Where there are gaps in the administrative record or when the ALJ has applied an improper legal standard, remand to develop the record is appropriate rather than for calculation of benefits, id. at 385; Parker, supra, 626 F.2d at 235.

*Application*

In the instant case, the issue is whether the ALJ had substantial evidence to support the decision rendered denying disability coverage. Plaintiff argues that the second ALJ failed to apply the treating physician rule in finding her residual functional capacity (Docket No. 12, Pl. Memo. at 21-36). The second ALJ eliminated all postural limitations to light work from that residual functional capacity finding (id. at 22) [R. 395-96; cf. R. 19 (first ALJ found in residual functional capacity that plaintiff could lift 20 pounds occasionally, 10 pounds frequently, and should avoid repetitive stooping)]. Plaintiff argues that the second ALJ substituted his own judgment for that of competent medical opinion (from Drs. Pone and Dave) (id.). Plaintiff also claims the ALJ "failed to evaluate the medical evidence pursuant to the appropriate legal standards, failed to properly develop the record, and failed to identify evidence supporting the RFC finding" (id.). Plaintiff claims that the record lacks medical opinion or other evidence supporting the residual functional capacity assessment that plaintiff could perform light work without further limitations, resulting in a gap in the medical record (id. at 22-23). The second ALJ found the record supported plaintiff's difficulties in walking and standing and in handling items [R. 401] but the ALJ found no resulting restrictions in the residual functional capacity (id. at 23). Plaintiff next faults the ALJ in failing to weigh properly the opinion of consultative

examiner, Dr. Dave (id. at 24-29) [R. 296, 399]. The ALJ also failed to provide good reasons for rejecting additional environmental limitations in the residual functional capacity assessment (id. at 30-31). Plaintiff faults that ALJ for not developing the record (id. at 31-36), where the ALJ did not seek a medical opinion from Dr. Winston Douglas, who treated plaintiff from 2015-16 (id. at 33, 9-15; see also id. at 15-19, continued treatment by Dr. Douglas' nurse, Merlie Barcena, through 2017). In a footnote, plaintiff claims that the medical record has gaps from treatment records for Drs. Chester Fox, Pone, and Kenneth Gayles (id. at 9 n.2). Given this incomplete record, plaintiff faults the ALJ's consistency finding that plaintiff's statements were not consistent with this incomplete medical record (id. at 36-40).

Defendant responds that the ALJ properly weighed the medical opinions here (Docket No. 15, Def. Memo. at 13-20). Defendant claims that the administrative record here was complete and fully developed (id. at 20). With this record, defendant concludes that the ALJ properly evaluated plaintiff's symptoms and their consistency with that record (id. at 20-21).

In reply, plaintiff counters that the opinions of Drs. Dave and Pone do not support the residual functional capacity and that assessment resulted from the ALJ's lay interpretation of the objective findings (Docket No. 16, Pl. Reply Memo. at 1-7). The ALJ fails to identify the other evidence that was consistent with these doctors' opinions that were accepted (id. at 4-5). "The ALJ and defendant failed to tie the medical evidence to the specific findings contained in the RFC assessment, and the ALJ's incomplete summation of the record was inadequate" (id. at 5). Plaintiff argues that the ALJ was obliged to recontact Drs. Pone and Douglas if the bases of their limitations were unclear (id. at 6). Plaintiff also faults the ALJ for not explaining why her symptoms of fatigue, lethargy, and the need for breaks are not supported by plaintiff's severe

11

condition and the treatment for her severe impairments (id. at 7-9). Finally, at Step Five, plaintiff argues that the ALJ tailored "his analysis of the evidence to ensure a finding of non-disability," avoiding a limited range of sedentary work that (under the Medical-Vocational Guideline Grid Rule 201.14 and her age and education) would have found plaintiff disabled (id. at 9-10). Plaintiff concludes by either remand for calculation of benefits or remand for further administrative proceedings (id. at 10).

I.  Dr. Pone's Opinion as Treating Physician

The first ALJ gave great weight to Dr. Pone's opinion [R. 503] (Docket No. 12, Pl. Memo. at 29). The second ALJ wrote to Dr. Pone seeking clarification as to what "solvent" meant and whether it included water [R. 414 (Jan. 19, 2018, Transcript), 1473 (March 21, 2018, letter to Dr. Pone)] (id. at 29-30). Plaintiff concludes that the second ALJ used this clarification as a means to substitute his judgment for that of Dr. Pone and the ALJ's rejection of Dr. Pone's opinion was inconsistent with the remand order and unsupported by the record (id. at 30).

At issue in this remanded matter is plaintiff's ability to perform light work, aside from her ability to bear exposure to chemicals and other atmospheric extremes. The first remand, Lloyd, supra, 15CV248, only considered plaintiff's ability to bear exposure to chemical cleaning solutions [R. 459-61]. On remand, some allowance for that limitation is in the residual functional capacity, but the ALJ undercuts the limitation by giving limited weight to the medical opinion that found that limitation, from Dr. Pone. As defendant argues (Docket No. 15, Def. Memo. at 18), the second ALJ was consistent with the remand order because he considered the environmental restrictions not addressed previously [R. 400, calling Dr. Pone, "Dr. Entola"]

12

Plaintiff objects to the consideration of Dr. Pone's limitations on plaintiff's ability to perform light work generally (Docket No. 12, Pl. Memo. at 29-31). Dr. Pone's environmental limitations are consistent with the remand; the only issue for consideration was rejection of other portions of Dr. Pone's opinion.

II.     Weight of Other Medical Opinions

Plaintiff next objects to the weight the second ALJ gave to the opinion of consultative examiner Dr. Dave in not applying the factors of 20 C.F.R. § 416.927 for this medical opinion (Docket No. 12, Pl. Memo. at 24-29). Despite not deserving the deference of treating source, plaintiff argues that Dr. Dave's opinion needed to be assessed on the regulatory factors before assigning diminished weight to it (id. at 24).

Dr. Dave's opinion noted plaintiff had mid palmar tenderness of both hands, had wrist braces at the examination, and was slow in zippering, buttoning, and tying bilaterally [R. 296]. The doctor found that plaintiff had full range of motion for shoulders, elbows, forearms, and wrists [R. 296]. Dr. Dave also found that she had moderate limitations for repetitive fine and gross motor manipulation in both hands due to carpel tunnel syndrome [R. 297]. Curiously, Dr. Dave also found that plaintiff had intact finger and hand dexterity [R. 296]. (Docket No. 12, Pl. Memo. at 25, 3). This appears to be inconsistent [R. 399].

Plaintiff now argues that the second ALJ mischaracterized the treatment record as showing plaintiff had "grossly normal musculosketal findings" (id. at 25, 26) [R. 399, 395-96, 1313]. She points to other parts of the record that show evidence of swelling, deformity, and restricted range of motion for her fingers and wrists (id. at 26) [R. 281, 1373, 1369, 1331, 1346, 1351, 1266, 1269, 1341, 1330-31, 1266, 1269, 1278] not discussed by the ALJ relative to

Dr. Dave's opinion (id.). She also points out that the ALJ's own findings are internally inconsistent, finding in the heading for Step Two that she had a severe impairment due to cubital and tunnel syndromes at Step Two but in the text concluding that the carpel tunnel syndrome was <u>not</u> severe (<u>id.</u> at 27; [R. 391-92]). There, the ALJ summarized plaintiff's treatment for this condition as "limited, routine and conservative," relying on Dr. Dave's findings as to hand and finger dexterity and the abilities to zip, button, and tie [R. 392].

The second ALJ did apply § 416.927 factors, stating that Dr. Dave examined plaintiff once but had no treatment relationship [R. 399], <u>cf.</u> 20 C.F.R. § 416.927(c)(1), (2). The ALJ found that the opinion was not consistent with the medical record or internally consistent (finding intact hand dexterity but fine manipulation limitation) [R. 399, 296], <u>cf. id.</u> § 416.927(c)(4). The ALJ gave greater weight to Dr. Dave's exposure to sunlight finding rather than to the rest of the opinion [R. 399], based on the distinction between the two set of findings as to the support for the findings in the medical record [R. 399].

Defendant points out findings in the record that plaintiff had a normal gait (<u>e.g.</u>, Docket No. 15, Def. Memo. at 14-15). Her gait, however, is not at issue. The issue with Dr. Dave's opinion is her ability to manipulate with her hands. For example, on May 24, 2016, Dr. Douglas found that plaintiff's gait was normal but also found that her hands were normal to inspection but had limited range of motion due to pain and Tinel's sign was positive [R. 1269]. Both sides cite this record to support their respective positions (<u>compare</u> Docket No. 12, Pl. Memo. at 26 <u>with</u> Docket No. 15, Def. Memo. at 14). Another commonly cited part of the record [R. 1373], from Dr. Douglas' examination on May 2, 2015, also found plaintiff's gait was normal but her hands revealed swelling over the proximal interphalangeal joint of the thumb, index, and middle fingers

14

[R. 1373] (Docket No. 12, Pl. Memo. at 26; Docket No. 15, Def. Memo. at 15). Thus, the record does support Dr. Dave's limitation finding for hand and finger dexterity and repetitive manipulation despite findings of otherwise a normal musculoskeletal system. Plaintiff's motion (Docket No. 12) on this ground (as well as consideration of Dr. Pone's opinion) is **granted**.

III. Gaps in Medical Record

Plaintiff next points out gaps in the medical record. First, plaintiff argues is the gap from the lack of a function-by-function analysis regarding plaintiff's ability to work from Drs. Pone or Douglas (Docket No. 12, Pl. Memo. at 31-32), noting temporal gaps in Dr. Douglas' treatment prior to May 22, 2015, despite references to appointments, missing treatment notes from Dr. Charles Fox from 2011 and Dr. Pone from 2012 (id. at 9 n.2; [R. 329, 333, 335]).

IV. Plaintiff's Consistency with the Medical Record

Plaintiff testified that she was tired all the time, needed both hands to lift a gallon jug of milk, and she claimed problems with her memory, concentration, and social interaction [R. 417-20, 425, 427-28, 432). The second ALJ, however, concluded that the totality of the evidence did not support limitations to the degree claimed by plaintiff [R. 401]. (Docket No. 15, Def. Memo. at 14.)

Given the disposition of the medical record in this case, plaintiff's testimony is consistent with the medical records. The second ALJ thus erred in diminishing plaintiff's opinion; plaintiff's Motion (Docket No. 12) is **granted** on this ground as well.

15

V.    Remand for Calculation of Benefits

Given the number of issues that need revisiting (and despite an earlier remand in this matter, Lloyd, supra, Case No. 15C248), remand for recalculation of benefits **would not be appropriate in this case**.   Additional evidence is required here and the errors are not so glaring as to require this Court to declare plaintiff disabled as a matter of law.   This much of plaintiff's motion (Docket Nos. 12, 16, Pl. Reply Memo. at 10) is **denied**.

## CONCLUSION

For the foregoing reasons, plaintiff's motion (Docket No. 12) judgment on the pleadings is **granted**, and defendant's motion (Docket No. 15) for judgment on the pleadings is **denied**. Thus, the decision of the defendant Commissioner is **vacated and remanded** for further proceedings consistent with the above decision to find additional facts, pursuant to sentence four of 42 U.S.C. § 405(g), see Curry v. Apfel, 209 F.3d 117, 124 (2d Cir. 2000).   The Clerk of the Court shall close this case.

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
December 11, 2019